1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LOY LOUIS RACKLEY,                        No.  2:21-cv-01784-DAD-EFB (HC)

12                    Petitioner,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   MARCUS POLLARD, Warden,

15                    Respondent.

16

17        Petitioner is a state prisoner proceeding with counsel in this petition for a writ of habeas

18   corpus.  28 U.S.C. § 2254.  He challenges his conviction on two counts of sexual penetration or

19   oral copulation with a child 10 years old or younger and three counts of lewd and lascivious acts

20   upon a child under the age of 14.  ECF No. 1.

21        **I.        Background**

22        The facts, as relayed by the California Court of Appeal[1], are:

23        Defendant moved to Redding in 2015 to be closer to family. He hosted barbecues
          and other family gatherings at his house, which featured a pool and hot tub.
24        Defendant's niece, J., was a frequent visitor, especially in summer, when her
          daughter, A., made regular use of the pool.
25
     /////
26
     _____

27        [1] The facts recited by the state appellate court are presumed to be correct where, as here,
     the petitioner has not rebutted the facts with clear and convincing evidence.  28 U.S.C. §
28   2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

                                              1

A. began spending the night at defendant's house when she was 5 years old. During the trial, A.'s mother estimated that A. spent the night at defendant's house between seven and 10 times. J. noticed a change in A. around the time she turned six. According to J., A. became "[v]ery emotional" and seemed to be "[c]rying a lot." J. noticed that A. refused to hug or acknowledge defendant. She told J. that she did not want to go to defendant's house anymore.

J. hosted a family gathering in April 2017. She noticed that A. was unusually quiet. That night, A. told J. that she felt a burning sensation when she urinated. Later, in the course of the same conversation, A. told J. that she was upset with defendant. J. examined A.'s vaginal area and noticed it was "very inflamed and red." A. had spent the night at defendant's house several days earlier.

A. was interviewed by Sergeant Chris Edwards of the Shasta County Sheriff's Department and Jen Rowe from Children's Family Services on two separate occasions. During the first interview, A. stated that her uncle "scratched" her with his "long fingernail." When asked to elaborate, she explained that he scratched her "crotch" on the "outside," towards the "bottom." During the second interview, A. stated that defendant "licked [her] crotch" in the bedroom. She also disclosed that defendant showered with her.

Defendant was charged with three counts of sexual penetration or oral copulation of a child 10 years old or younger (Pen. Code, § 288.7, subd. (b)—counts 1-3), and three counts of lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (a)—counts 4-6). Defendant waived his right to a jury trial, and the case was tried to the court in May 2018. A. was seven years old at the time of trial; defendant was 73.

A. testified for the prosecution. During direct examination, the prosecutor showed A. an anatomical drawing of a girl. A. identified the girl's genital area as the "crotch," adding that the crotch is used for "peeing."

A. testified that defendant touched her "crotch" with his finger while they were standing naked in the shower. She indicated that defendant moved his finger, demonstrating by "pointing one finger down at the table," and "pushing it forward and pulling it back." The trial court would later describe this gesture as "an in and out motion."

The prosecutor produced a pen and empty cup, which she used to demonstrate the concepts of "inside" and "outside." She then asked A. whether defendant touched her "crotch" on the "inside" or the "outside." A. responded that defendant touched her on the "outside." When asked whether defendant ever put his finger "inside" her crotch, A. responded, "No."

A. recalled that defendant touched her crotch every time she stayed at his house, which she quantified as four times. A. also recalled that defendant touched her crotch with his tongue when she was lying on the bed in his bedroom.

A. testified that she decided to tell J. about defendant's conduct because her crotch hurt. She explained that her crotch hurt on the "[i]nside" because defendant "touched the middle of it" with his finger and tongue.

/////

/////

2

1  Following the close of the prosecution's case, defense counsel moved to dismiss
   pursuant to section 1118, arguing, inter alia, that the prosecution failed to
2  establish penetration. The trial court granted the motion as to one count of sexual
   penetration or oral copulation with a child 10 years old or younger (count 3), but
3  denied the motion with respect to the remaining counts (counts 1 and 2).

4  Defendant testified in his own defense. Defendant admitted showering with A.,
   but claimed he did so in order to wash her hair. He denied touching her crotch or
5  vaginal area. He testified that he suffered from a "spa rash" from using the hot
   tub around the time that A. complained to J. about painful urination.

6

7  Following closing argument, the trial court ruled from the bench, stating, with
   respect to count 1: "The court finds defendant engaged in an act of sexual
8  penetration with [A.] by engaging in digital penetration of her vagina. Although
   the court finds the testimony supports defendant touched [A.'s] vagina on the
9  outside on multiple occasions, there is substantial evidence to support a finding
   beyond a reasonable doubt the penetration [occurred] on at least one occasion."

10 The trial court explained: "This finding is based upon [A.'s] trial testimony that
   the defendant hurt her crotch . . . when he touched her and what she described as
11 touching her in the middle of it referencing her crotch on the inside. She also
   described that he had a long fingernail on the finger that he used to touch her
12 inside that scratched her on this occasion which she associated with causing her
   pain upon urination. [¶] [A.] has consistently said in her interviews and during
13 her testimony that the defendant touched her crotch with one finger and physically
   demonstrated before the Court and during the time of her first interview,
14 according to Sergeant Edwards' testimony, the motion of an index finger moving
   forward and backward, which the Court would describe as an in and out
15 movement."

16 The trial court further found that "the defendant engaged in multiple acts of oral
   copulation with [A.] based on [A.'s] testimony that the defendant licked her
17 vagina, which she often described as her crotch, multiple times while she was
   laying on her back on the defendant's bed." The trial court further found that
18 defendant committed lewd and lascivious acts on A. within the meaning of
   section 288, subdivision (a), as charged in counts 4 through 6.

19
   Defendant appeared for sentencing in June 2018. He received a determinate term
20 of 10 years in state prison for counts 4 and 5, followed by an indeterminate
   sentence of 30 years to life for counts 1 and 2. The trial court stayed the two year
21 sentence on count 6 pursuant to section 654. This appeal timely followed.

22 *People v. Rackley*, No. C087570, 2020 Cal. App. Unpub. LEXIS 2298, at *1-6 (Apr. 13, 2020).

23 On appeal, petitioner argued that his conviction on the two counts of sexual penetration or

24 oral copulation with a child 10 years or younger were not supported by sufficient evidence and

25 /////

26 /////

27 /////

28 /////

that his waiver of jury trial was invalid.  ECF No. 1 at 11.  The California Court of Appeal rejected these arguments and affirmed the judgment on April 13, 2020.  ECF No. 1-2.  The California Supreme Court denied petitioner's request for review on July 8, 2020.  ECF No. 17-10.

Petitioner filed a habeas petition in the California Supreme Court on March 30, 2021. ECF No. 17-11.  In the petition, he argued that: (1) trial counsel was ineffective for failing to retain an expert and obtain an image from the victim's sexual assault exam; (2) trial counsel was ineffective for failing to call favorable witnesses; (3) the prosecution unlawfully withheld the sexual assault exam image in violation of *Brady v. Maryland*; and (4) new evidence requires a new trial.  *Id.*  The court denied the petition without opinion on March 23, 2022.  ECF No. 17-16.

The claims raised in the instant petition are comprised of the sufficiency-of-the-evidence claims raised in petitioner's direct appeal plus all claims raised in his state habeas petition. Accordingly, the last reasoned state court opinion on petitioner's sufficiency-of-the evidence claims is the state appellate court's opinion on petitioner's direct appeal.  Because the California Supreme Court denied the remainder of petitioner's claims without opinion, this court must independently review the record to determine whether that denial was reasonable under the principles set out below.

## II.    Analysis

### A.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

1

2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 47-49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

20

21

22

23

24

25

26

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*,

27

28

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

1   360 F.3d 997, 1002 (9th Cir. 2004).  A federal habeas court "may not issue the writ simply

2   because that court concludes in its independent judgment that the relevant state-court decision

3   applied clearly established federal law erroneously or incorrectly.  Rather, that application must

4   also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465,

5   473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

6   independent review of the legal question, is left with a 'firm conviction' that the state court was

7   'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

8   relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

9   decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

10  U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

11  court, a state prisoner must show that the state court's ruling on the claim being presented in

12  federal court was so lacking in justification that there was an error well understood and

13  comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562

14  U.S. at 103.

15      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

16  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

17  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

18  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

19  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

20  de novo the constitutional issues raised.").

21      In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last

22  reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044,

23  1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates

24  the reasoning from a previous state court decision, the court may consider both decisions to

25  ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.

26  2007) (en banc).  "When a federal claim has been presented to a state court and the state court has

27  ─────────────

28  presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
    384 F.3d 628, 638 (9th Cir. 2004)).

6

1    denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

2    absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at

3    99.  This presumption may be overcome by a showing "there is reason to think some other

4    explanation for the state court's decision is more likely." *Id*. at 99-100 (citing *Ylst v.*

5    *Nunnemaker*, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a petitioner's

6    claims rejects some claims but does not expressly address a federal claim, a federal habeas court

7    must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  *Johnson*

8    *v. Williams*, 568 U.S. 289, 293 (2013).

9         Where the state court reaches a decision on the merits but provides no reasoning to

10    support its conclusion, a federal habeas court independently reviews the record to determine

11    whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

12    *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

13    review of the constitutional issue, but rather, the only method by which we can determine whether

14    a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

15    reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

16    reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 99.

17         When it is clear, however, that a state court has not reached the merits of a petitioner's

18    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

19    habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

20    F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

21              *B.  Petitioner's Claims*

22         Petitioner raises five grounds for habeas relief: (1) insufficient evidence to support the

23    convictions on counts one and two; (2) ineffective assistance of trial counsel for failure to consult

24    with an expert and obtain images from the victim's sexual abuse examination; (3) ineffective

25    assistance of trial counsel for failure to call certain witnesses; (4) violation of petitioner's right to

26    exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963); and (5) new evidence shows

27    that the victim's testimony was coached.  ECF No. 1 at 12-18.  The court will address these

28    grounds in the order presented by petitioner.

7

1      *Sufficiency of the Evidence.*   In Count One of the information filed against petitioner, the

2   government charged him with violating California Penal Code § 288.7(b), oral copulation and

3   causing penetration of genital and anal openings as defined by § 289, upon A., who was 10 years

4   of age or younger, occurring on or before April 15, 2016 and April 15, 2017.  ECF No. 1 at 25.  In

5   Count Two, the government charged petitioner with a second violation of § 288.7(b) against A.

6   during the same time frame.  *Id.*  Petitioner's conviction on these two counts resulted in

7   consecutive 15-years-to-life prison terms.  *Id.* at 27.  Petitioner claims that the trial court lacked

8   sufficient evidence to convict him of these charges.  The California Court of Appeal rejected this

9   claim:

10          Defendant contends the evidence was insufficient to support the trial court's
            findings that he sexually penetrated A. in the shower (count 1) and orally
11          copulated her in the bedroom (count 2). We are not persuaded.

12          We apply a deferential standard of review: "In deciding the sufficiency of the
            evidence, a reviewing court resolves neither credibility issues nor evidentiary
13          conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony
            is the exclusive province of the trier of fact. [Citation.] Moreover, unless the
14          testimony is physically impossible or inherently improbable, testimony of a single
            witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th
15          1149, 1181, 24 Cal. Rptr. 3d 112, 105 P.3d 487.)

16          "'[W]e examine the whole record in the light most favorable to the judgment to
            determine whether it discloses substantial evidence—evidence that is reasonable,
17          credible and of solid value—such that a reasonable trier of fact could find the
            defendant guilty beyond a reasonable doubt." [Citations.] We presume in support
18          of the judgment the existence of every fact the trier could reasonably deduce from
            the evidence.'" (*People v. Nelson* (2011) 51 Cal.4th 198, 210, 120 Cal. Rptr. 3d
19          406, 246 P.3d 301.) "The substantial evidence standard of review is generally
            considered the most difficult standard of review to meet, as it should be, because
20          it is not the function of the reviewing court to determine the facts." (*In re Michael
            G.* (2012) 203 Cal.App.4th 580, 589, 137 Cal. Rptr. 3d 476.)
21
            *1. Count 1—Sexual Penetration of a Child 10 Years Old or Younger*
22          Section 288.7, subdivision (b) punishes "oral copulation or sexual penetration, as
            defined in Section 289, with a child who is 10 years of age or younger." Section
23          289 defines "sexual penetration" as "the act of causing the penetration, however
            slight, of the genital or anal opening of any person" for the purpose of sexual
24          arousal or gratification. (§ 289, subd. (k)(1).) Thus, "sexual penetration" does not
            require penetration of the vagina, but only penetration of the external genital
25          organs, which include the labia majora. (See *People v. Quintana* (2001) 89
            Cal.App.4th 1362, 1371, 108 Cal. Rptr. 2d 235 [evidence that defendant
26          penetrated the victim's labia majora was sufficient to establish sexual penetration
            within the meaning of section 289].)
27
            Defendant argues A.'s testimony established only that he touched her external
28          genital organs, but not that he penetrated them. We disagree. A. testified that

                                                    8

defendant touched her "crotch," which she defined as the body part used for "peeing." A. physically demonstrated how defendant touched her "pointing one finger down at the table" and "pushing it forward and pulling it back," in what the trial court described as "an in and out motion." The trial court could have reasonably inferred from A.'s demonstration that the movement of defendant's finger had been penetrative, rather than nonpenetrative.

> [Footnote: Defendant argues that: "The finding that [A.] was demonstrating an 'in and out movement' cannot be inferred from the child's demonstration of moving her finger forward and backward on the flat surface of a table." Nothing in the record supports defendant's contention that A. moved her finger in such a way as to suggest lateral movement on a flat surface. Rather, the record indicates that A. "point[ed] one finger down at the table" and "push[ed] it forward and pull[ed] it back," implying a vertical movement. The trial court, which observed the demonstration, was in the best position to determine whether the movement of A.'s finger conveyed "an in and out motion" or something else.]

Such an inference would have found support in A.'s testimony that defendant scratched her crotch with his fingernail (since defendant's fingernail would have been unlikely to have factored into any nonpenetrative touching) and hurt the "inside" of her crotch by touching the "middle of it." Such an inference would have found further support in J.'s testimony that A.'s vaginal area was "very inflamed and red." On the record before us, the trial court could reasonably infer that defendant's finger penetrated A.'s external genital organs, if not her vagina. Thus, substantial evidence supports the conviction for sexual penetration with a foreign object. (*People v. Quintana, supra*, 89 Cal.App.4th at p. 1371.)

Defendant resists this conclusion, noting the prosecutor, having established that A. understood the difference between "outside" and "inside" by means of the cup and pen, elicited testimony that defendant only touched A. on the "outside" of her crotch. But the trial court was free to consider that testimony in light of the question posed by the prosecutor. The trial court could reasonably conclude that the cup and pen analogy failed to meaningfully convey either the structure of the female anatomy or the statutory definition of "sexual penetration." That A. characterized the touching as "outside" her crotch does not compel the conclusion that no penetration occurred. The trial court reasonably resolved any ambiguities in A.'s testimony, taking into account her age and understandable limitations on her vocabulary, and understanding her to convey by her gestures and testimony that the "in and out" movement of defendant's finger resulted in sexual penetration, at least to some slight extent. As such, substantial evidence supports defendant's conviction in count 1.

> [Footnote: Defendant also argues the evidence of A.'s painful urination and vaginal inflammation raised only a speculative inference of sexual penetration, and thus falls short of substantial evidence. (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851, 96 Cal. Rptr. 3d 459 ["Speculation is not substantial evidence"].) He theorizes that A.'s discomfort could have been the result of an unrelated urinary tract infection or "spa rash." These arguments amount to an invitation to reweigh the evidence, which we decline to do.]

/////

/////

9

1

*2. Oral Copulation—Count 2*

Next, defendant argues there was insufficient evidence to support the conviction
for orally copulating A. in the bedroom in count 2. We disagree.

2

3

"The elements of oral copulation with a child 10 years of age or younger (§ 288.7,
subd. (b)) are: (1) The defendant engaged in an act of oral copulation with the
victim; (2) when the defendant did so, the victim was 10 years of age or younger;
and (3) at the time of the act, the defendant was at least 18 years old. (CALCRIM
No. 1128.) Oral copulation is defined as any contact, no matter how slight,
between the mouth of one person and the sexual organ of another. Penetration is
not required." (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79-80, 191 Cal.
Rptr. 3d 905.)

4

5

6

7

Defendant argues the prosecution failed to show contact with A.'s "sexual organ."
A. testified that defendant touched her crotch with his tongue when she was lying
on the bed in his bedroom. As we have discussed, she defined her crotch as the
body part used for peeing. She also testified that her crotch hurt on the "[i]nside"
because defendant "touched the middle of it" with his finger and tongue. From
this testimony, the trial court could reasonably infer that defendant placed his
mouth on A.'s genitalia or "sexual organ," thereby committing the act of oral
copulation. (*People v. Mendoza, supra,* 240 Cal.App.4th at pp. 79-80.) Thus,
substantial evidence supports the conviction for oral copulation with a child 10
years of age or younger in count 2. (*People v. Rasmuson* (2006) 145 Cal.App.4th
1487, 1508, 52 Cal. Rptr. 3d 598 ["The testimony of one witness, if believed, may
be sufficient to prove any fact"]; see also *People v. Hunter* (1958) 158 Cal.App.2d
500, 502, 505, 322 P.2d 942 [evidence of oral copulation was sufficient when the
defendant "licked and rubbed [the victim] between her legs"]; *People v.
Harris* (1951) 108 Cal.App.2d 84, 87-88, 238 P.2d 158 [evidence that defendant
placed his mouth on the victim's "private parts" was sufficient].)

8

9

10

11

12

13

14

15

16

*Rackley*, 2020 Cal. App. Unpub. LEXIS 2298, at *6.

17

The Due Process Clause "protects the accused against conviction except upon proof

18

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

19

charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

20

conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

21

rational trier of fact could have found the essential elements of the crime beyond a reasonable

22

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Juan H. v. Allen*, 408 F.3d 1262,

23

1274, 1275 & n. 13 (9th Cir.2005).  "[T]he dispositive question under Jackson is 'whether the

24

record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein*

25

*v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  Put another

26

way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence

27

only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2

28

(2011).

1    In conducting federal habeas review of a claim of insufficiency of the evidence, "all

2   evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*,

3   651 F.3d 1112, 1115 (9th Cir. 2011).  "A petitioner for a federal writ of habeas corpus faces a

4   heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

5   on federal due process grounds." *Juan H*., 408 F.3d at 1274.  The federal habeas court determines

6   sufficiency of the evidence in reference to the substantive elements of the criminal offense as

7   defined by state law.  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

8    The state appellate court's evaluation of the sufficiency of the evidence on Counts One

9   and Two was not contrary to, nor an unreasonable application of, these principles.  Petitioner

10   contends that there was insufficient evidence to support the element of penetration on Count One

11   and oral copulation on Count Two.  However, the court reasonably found that there was evidence

12   of penetration, as defined by California law rather than a simple contrast between "inside" and

13   "outside," in the victim's testimony.  *People v. Quintana*, 89 Cal. App. 4th 1362, 1371 (Cal. Ct.

14   App. 2001) (Penal Code § 289 prohibits penetration "however slight," including intrusion into

15   outer structures of the vulva).

16    Petitioner also contends that there was insufficient evidence to support the element of oral

17   copulation for Count Two, because A. only testified that petitioner touched her "crotch" with his

18   mouth, rather than any specific sexual organ.  The state appellate court reasonably concluded,

19   however, that the young victim's testimony (e.g., that her "crotch" was used for "peeing")

20   supported the inference of oral copulation.

21    *IAC – Expert Testimony and Examination Images*.  Petitioner next argues that his trial

22   counsel was ineffective for failing to: (1) obtain the examination image accompanying the "Cal

23   OES 2-930 form" (which documented findings made during A.'s April 15, 2017 exam), (2)

24   provide that image to an expert, and (3) call the expert to contradict the form's "findings and

25   interpretation" that the exam revealed an abnormality of erythema on A's labia minora that was

26   consistent with a history of abuse.  Petitioner submits the declaration of Dr. James Crawford-

27   Jakubiak, a pediatrician with experience evaluating claims of child abuse.  ECF No. 1-6.  Dr.

28   Crawford-Jakubiak opines that the form's conclusion of abnormality is incorrect, because the

1    image shows only a mild erythema, which could have been caused by many things other than

2    abuse.  *Id.* at 4-5.

3          The clearly established federal law governing ineffective assistance of counsel claims is

4    that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To

5    succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was

6    deficient and that (2) the "deficient performance prejudiced the defense."  *Id.* at 687.  Counsel is

7    constitutionally deficient if his or her representation "fell below an objective standard of

8    reasonableness" such that it was outside "the range of competence demanded of attorneys in

9    criminal cases."  *Id.* at 687-88 (internal quotation marks omitted).  "Counsel's errors must be 'so

10   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  *Richter*, 562

11   U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

12         A court can find prejudice where "there is a reasonable probability that, but for counsel's

13   unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

14   U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

15   outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."

16   *Richter*, 562 U.S. at 112.

17         "The standards created by *Strickland* and § 2254(d) are both "highly deferential," and

18   when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations

19   omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

20   counsel, . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court

21   and the defense attorney the benefit of the doubt.'"  *Woods v. Donald*, 575 U.S. 312, 316-17

22   (2015) (quoting *Burt v. Titlow*, 571 U.S. 12 (2013)).  As the Ninth Circuit has recently

23   acknowledged, "[t]he question is whether there is any reasonable argument that counsel satisfied

24   *Strickland's* deferential standard."  *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015)

25   (quoting *Richter*, 562 U.S. at 105).  *See also Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir.

26   2013) ("The pivotal question is whether the state court's application of the *Strickland* standard

27   was unreasonable.  This is different from asking whether defense counsel's performance fell

28   below *Strickland's* standard.") (quoting *Richter*, 562 U.S. at 101).  Here, where petitioner's

1   *Strickland* claims were denied without opinion, the court must determine whether there was no

2   reasonable basis for the state court to find that counsel's performance met the *Strickland* standard.

3   *Richter*, 562 U.S. at 99.

4        The court finds that there was a reasonable basis for the state court to find no *Strickland*

5   violation, because there was, and is, a reasonable basis for concluding that petitioner suffered no

6   prejudice from his counsel's decision not to pursue the exam image or present an expert to testify

7   regarding the exam and/or image.  In the exam itself, the examiner concluded that A.'s genitalia

8   showed an abnormality (erythema, or redness, on both labia minora) that was consistent with the

9   information relayed by A. but which have been caused by sexual abuse or some other cause.  ECF

10   No. 1-6 at 3-4.  Dr. Crawford-Jakubiak's declaration provides a weak rebuttal to that finding,

11   disagreeing only with the term "abnormal," while agreeing that the image taken at the time of the

12   exam showed some redness.  *Id.* at 4-5.  More importantly, the prosecution did not rely on the

13   exam at all during trial, but instead relied on the testimonies of A. and her mother, as did the trial

14   court in finding petitioner guilty.  ECF No. 17-3 at 187-93.  There is no reason to think that a

15   weak rebuttal of evidence not relied on by the prosecution would have changed the trial court's

16   conclusion that A. and her mother gave credible testimony.  Thus, the state court could very

17   reasonably conclude that trial counsel's decision not to present evidence concerning A.'s sexual

18   assault examination did not prejudice petitioner.

19        *IAC – Witnesses.*  Petitioner next claims that trial counsel rendered ineffective assistance

20   by failing to call Shirley Chambers and the victim's grandmother as witnesses.  Petitioner submits

21   a declaration from Chambers in which she avers that she witnessed A. interacting with petitioner

22   at his home at a Thanksgiving gathering and a pool party and that she did not appear to be

23   uncomfortable or afraid of petitioner.  ECF No. 1-8 at 1.  Chambers also avers that she heard

24   petitioner advising others that the chemicals used in the spa had caused people, including A., to

25   develop rashes "down there," corroborating petitioner's testimony (and buttressing the defense's

26   claim that A.'s genital redness had been caused by the spa chemicals, not abuse).  *Id.*  Chambers

27   also believed it was not in petitioner's character to sexually abuse a child.  *Id.*

28   /////

1    Again, the state court could reasonably conclude that trial counsel's decision not to

2    present Chambers as a witness did not prejudice petitioner.  As to Chambers's opinion on

3    petitioner's character, such testimony would have opened the door to the prosecution's

4    introduction of evidence that petitioner had been arrested after being accused of molesting a 13-

5    year-old girl in 1995 in ways similar to the molestation of A.  ECF No. 17-3 at 29-34.  The court

6    had excluded such evidence during pretrial motion practice, but with the caveat that it would

7    revisit that ruling if, for example, an impeachment issue arose during trial.  *Id.*  Chambers's

8    limited observations of A. on two occasions and testimony regarding spa rash were highly

9    unlikely to produce a different trial result in the face of the compelling testimony of A. and her

10   mother and the less-than-credible testimony from petitioner.

11   Petitioner also contends that his trial counsel rendered ineffective assistance by failing to

12   call A.'s grandmother to the stand, because she had told Chambers that the victim's family

13   intended to sue petitioner for "everything we can."  Petitioner believes this testimony would show

14   an intention by A.'s family to falsely accuse him in order to profit from a lawsuit.  But, again, this

15   testimony would not have refuted the credible testimonies offered by A. and her mother.

16   Moreover, it would have been cumulative of testimony offered by A.'s mother that she had

17   retained counsel for the purpose of suing petitioner, because she wanted "to hit him any way

18   legally that I could for hurting my daughter."  ECF No. 17-3 at 68.  The trial court was aware that

19   A.'s family intended to sue petitioner and nevertheless found the testimonies offered by A. and

20   her mother to be credible.

21   In sum, there were reasonable bases for the state court to find that petitioner suffered no

22   prejudice from the alleged deficiencies in his counsel's representation.  Accordingly, petitioner's

23   *Strickland* claims fail.

24   *Brady*.  Petitioner next argues that the prosecution violated his due process right to

25   favorable evidence by failing to turn over the sexual assault exam image.  Under *Brady*, "the

26   suppression of evidence favorable to the accused . . . violates due process where the evidence is

27   material either to guilt or to punishment."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Evidence

28   is "material" under *Brady* of there is a reasonable probability that, had the evidence been

14

1    disclosed to the defense, the result of the trial would have been different.  *Stickler v. Greene*, 527

2    U.S. 263, 280 (1999).  According to petitioner, the single photograph of A. taken during her

3    sexual assault exam did not show "erythema of a significant nature" and thus did not support the

4    exam report's finding of abnormality.  The image also could have been used to impeach the

5    testimony of A.'s mother, who testified that, several hours prior to the exam, she had observed

6    that A.'s genitalia was red and inflamed.

7         There was a reasonable basis for the state court to conclude that there was no reasonable

8    probability that, had the exam photo been provided to the defense, petitioner would not have been

9    convicted.  Whether A.'s genitalia was red and inflamed, or the extent of such redness, was

10   almost a non-issue at trial.  As noted above, the exam report itself, including its findings of

11   erythema and abnormality, was not relied on by the prosecution or the trial court.  On the other

12   hand, A. testified, in a manner deemed credible by the court, that petitioner molested her.  Her

13   mother (also deemed credible by the trial court) testified that A. began displaying sexualized

14   behaviors after spending the night with petitioner.  ECF No. 17-3 at 59-60.  There is no

15   reasonable probability that a single photograph showing perhaps a lesser degree of redness than

16   that attested to by A.'s mother would have overcome the significant evidence of petitioner's guilt.

17        *New Evidence.*  Lastly, petitioner argues that the court should grant the writ on the basis of

18   new evidence from Terry Jensen.  Jensen declares that she is a good friend of petitioner's and was

19   present in court during much of the trial.  ECF No. 1-9 at 1.  In the hallway outside the courtroom,

20   Jenson

21        observed the alleged victim and her family interacting in the hallway.  I recall
22        seeing the family reading to her from a piece of paper and asking the victim to
          repeat it.  When the little girl did not repeat what they were telling her to say, they
23        were stern and unhappy with her.  When the victim repeated what they wanted her
          to say, they would clap their hands and tell her what a good girl she was.  [¶]
24        There was a lot of noise in the hallway, and I could not hear the exact words the
          family was telling the victim to repeat.  I specifically recall hearing them tell her
25        to say the words "Vulva, Clitoris and Vagina."

26   *Id.*  The court construes this claim as a freestanding claim that petitioner is actually innocent of

27   /////

28   /////

1   the molestation crimes he was convicted of, in violation of due process.[3]   The U.S. Supreme

2   Court has thus far declined to clarify whether the Constitution's guarantee of due process

3   encompasses a right not to be convicted, through a fair trial, of a crime one has not committed.

4   *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014).  If such a right exists, the standard for

5   establishing an actual innocence claim is "extraordinarily high."  *Id.*  "[A]t a minimum, the

6   petitioner must go beyond demonstrating doubt about his guilt, he must affirmatively prove that

7   he is probably innocent."  *Id.* (internal quotation marks omitted).  In analyzing a freestanding

8   innocence claim, the court considers the credibility of the supporting evidence, including the

9   possible biases underlying new testimony and the timing of its presentation, to determine whether

10  the petitioner has submitted compelling evidence that he did not commit the crime(s).

11          Jensen's declaration falls far short of this high standard.  Jensen avers that she is a close

12  personal friend of petitioner, and thus is possibly biased to provide testimony that favors

13  petitioner.  The declaration itself suffers facial credibility problems in that Jensen avers that A.

14  was coached to use the terms "vulva, clitoris, and vagina," but the victim never used any of these

15  words in her testimony.  Rather, she consistently used the term "crotch" to refer to her genitalia,

16  as she had in her interviews with investigative authorities.  ECF Nos. 17-3 at 80-82, 17-1 at 105.

17  Most importantly, the Jensen declaration, even if entirely credited, does not show that petitioner

18  did not commit the crimes for which he was convicted (that is, even if the family coached A. on

19  her testimony, that does not mean that petitioner did not molest A.).  Accordingly, the Jensen

20  declaration does not provide sufficiently compelling evidence of innocence to support the

21  granting of the writ.

22  /////

23  /////

24  /////

25  /////

26  /////

27

28  ───────────────────

[3] In other words, an innocence claim not raised solely to overcome a procedural barrier to the consideration of other claims.  *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

16

1  **III.    Recommendation**

2      For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of

3  habeas corpus be DENIED.

4      These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties. Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

9  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

10 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

11 his objections petitioner may address whether a certificate of appealability should issue in the

12 event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing §

13 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a

14 final order adverse to the applicant).

15 Dated: June 1, 2023.

16                                   EDMUND F. BRENNAN
17                                   UNITED STATES MAGISTRATE JUDGE

17